**UNITED STATES of America, Appellee,**

v.

**Gladys P. JAMAR, Appellant.**

**No. 76–2260.**

United States Court of Appeals, Fourth Circuit.

Argued June 10, 1977.
Decided July 27, 1977.

Walter Jervis Sheffield, Fredericksburg, Va., for appellant.

Alexandia E. Devine, Third Year Law Student, N. George Metcalf, Asst. U. S. Atty., Richmond, Va. (William B. Cummings, U. S. Atty., Alexandria, Va., and Leonie Milhomme Brinkema, Sp. Asst. U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, WIDENER and HALL, Circuit Judges.

WIDENER, Circuit Judge:

In a multi-count indictment, Gladys P. Jamar was charged with perjury (Count I), unlawfully possessing a stolen United States treasury check (Count II), and uttering the same treasury check with intent to defraud the United States (Count III). From her convictions on all three counts, she prosecutes her appeal, raising several assignments of error. We find none of them meritorious, and accordingly affirm.

Foremost is the alleged abuse of discretion on the part of the district court in denying Mrs. Jamar's motion for a severance of the perjury count from the remaining unlawful possession and uttering counts. That the three counts came within the recognized boundaries of permissive joinder in the first instance, as defined by Rule 8(a) of the Federal Rules of Criminal Procedure,[1] is manifest. The transaction out of which Counts II and III arose was the abstraction from the mails by Mrs. Jamar of a treasury check mistakenly sent to her address,[2] her forgery of the endorsement upon the check, and her cashing of it. The perjury count arose out of the same transaction. When questioned under oath

---

1. Rule 8(a), F.R.Cr.P., reads as follows:

"(a) Joinder of offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

2. The intended payee of the check was a Mrs. Gayle G. Harris, who had resided at the defendant's address until September 1974. The check was Mrs. Harris' December 1974 military dependent allotment check. It bore on its face Mrs. Harris' name and her recent, former address, at which address the defendant then resided.

at her preliminary hearing on the possession and uttering charges, Mrs. Jamar explained the presence of her fingerprints on the forged check by stating that she touched it over a year after the offenses were committed, when a postal inspector investigating the matter brought the original of the check to her home. In fact, the jury must have found that only a dissimilar, photostatic copy of the check was given her by the postal inspector,[3] as he testified. Thus, all three counts "relate to, and are logically and intimately connected together with," the theft and cashing of the treasury check. *Cataneo v. United States,* 167 F.2d 820, 823 (4th Cir. 1948); cf. *Spear v. United States,* 216 F.2d 185 (4th Cir. 1954).

The fact that no misjoinder under Rule 8(a) occurred, however, does not end our inquiry, for Rule 14 F.R.Cr.P., provides: "If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. . . ." In contrast to misjoinder, which, if it occurs, is in itself error,[4] *Baker v. United States,* 131 U.S.App.D.C. 7, 401 F.2d 958, 973 (1968); see *Ingram v. United States,* 272 F.2d 567, 570 (4th Cir. 1959), in seeking a reversal under Rule 14, Mrs. Jamar must overcome the burden imposed by a stringent standard of review. In ruling on a motion for severance, the trial court is vested with discretion; it must carefully weigh the possible prejudice to the accused against the often equally compelling interests of the judicial process, which include the avoidance of needlessly duplicative trials involving substantially similar proof. *United States v. Isaacs,* 493 F.2d 1124, 1160 (7th Cir. 1974), cert. denied, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974). The exercise of this discretion will be overturned only for clear abuse affecting substantial rights of the accused. *Cataneo v. United States,* 167 F.2d 820, 823 (4th Cir. 1948). We are unable to say in this case that such an abuse of discretion occurred.

Firmly rooted in our jurisprudence is the proposition that evidence of other crimes of the defendant is ordinarily inadmissible in a criminal trial, except in limited circumstances and for limited purposes,[5] because the minds of jurors could be influenced against the accused to a degree out of proportion to the probative value of the evidence. 1 Wigmore on *Evidence* § 194 (3rd ed. 1940); see *Lovely v. United States,* 169 F.2d 386, 388–89 (4th Cir. 1948). For similar reasons, there is always a danger in joining different offenses for trial in a single indictment. The jury might improperly cumulate the evidence pertinent to different crimes either to infer a criminal disposition on the part of the accused, or to find guilt on all offenses when the evidence of each separate crime, if presented in separate trials, would be unpersuasive of guilt on any single offense. *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (1964).

As has been recognized, however, if the evidence of all the joined crimes would be mutually admissible for legitimate purposes in separate trials for each offense (assuming no joinder), the possibilities of

---

3. When Mrs. Jamar was asked at the preliminary hearing how she knew she had touched the original of the treasury check, she testified that she was familiar with treasury checks, which are green in color, because she received them bi-monthly. She testified that the check handed to her by the postal inspector was green, and was a treasury check. The photostatic copy was black and white.

4. We do not imply, however, that such an error is automatic ground for reversal, absent a showing of prejudice. See *United States v. Granello,* 365 F.2d 990 (2d Cir. 1966), cert.

denied, 386 U.S. 1019, 87 S.Ct. 1367, 18 L.Ed.2d 458 (1967).

5. See *People v. Molineux,* 168 N.Y. 264, 61 N.E. 286, 293–94 (1901); McCormick, *Evidence* § 190 (2nd ed. 1972). The general rule has also been stated as excluding evidence of other criminal acts "where it has no relevance or probative value except in so far as it may show a tendency or likelihood on the part of the accused to commit the crime." *Lovely v. United States,* 169 F.2d 386, 388–89 (4th Cir. 1948).

prejudice from the fact of joinder no longer present themselves so forcefully. *United States v. Sweig*, 441 F.2d 114 (2d Cir. 1971), cert. den., 403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed.2d 711 (1971); *Robinson v. United States*, 148 U.S.App.D.C. 58, 459 F.2d 847 (1972). This applies to the present case to a significant extent, though not entirely. If a separate trial for perjury had been held, much of the damaging evidence against Mrs. Jamar on the possession and uttering counts might nevertheless have been admissible to prove at least her motive and intent to lie, *United States v. Sweig*, supra; *Bradley v. United States*, 140 U.S.App.D.C. 7, 433 F.2d 1113 (1969); McCormick, *Evidence* § 190 (2nd ed. 1972), and perhaps materiality of the false statement as well. This serves not only to mitigate, if not eliminate, any prejudice from joinder on Count I, but it argues strongly in favor of joinder of all three counts, in the interest of avoiding two trials entailing much of the same proof when one would suffice.

■ Mrs. Jamar contends, however, that the evidence that she committed perjury would not have been admissible in a separate trial of counts II and III. Her theory is that, because there was a joint trial, the possibility exists that the jury improperly inferred that she unlawfully possessed and uttered the stolen check from the fact that she lied at the preliminary hearing. We may assume for argument that the admission of such evidence in a separate trial would have constituted error, although we do not decide the question.[6] But, as we have indicated, this type of prejudice inheres in all joinder to a certain extent; it is simply a factor to be considered in determining whether, in view of the nature of the charges and the evidence introduced at trial, such overriding prejudice to the defendant actually occurred that the district court's denial of a severance must be viewed as an abuse of discretion. And such a determination can only be made in light of the countervailing considerations supporting joinder, previously discussed.

■ Examining the evidence against Mrs. Jamar on counts II and III, it is clear that the case against her was strong indeed. There was evidence that the check was mailed to her address, which was the former address of the intended payee; the bank teller who cashed the check offered an eyewitness identification of Mrs. Jamar as the person who endorsed the check; Mrs. Jamar's handwriting was identified by an expert as that of the endorsement on the stolen check; and, finally, Mrs. Jamar's fingerprints were found on the check. This substantial, direct evidence of guilt is an important factor in considering the extent to which Mrs. Jamar might have been prejudiced by any improper inferences the jury could have drawn from the evidence of her perjury.[7] Entering into the balancing process as well is the mitigating fact that the district court instructed the jury that each count was to be treated separately. *United States v. Pacente*, 503 F.2d 543 (7th Cir. 1974) (en banc), cert. denied, 419 U.S. 1048, 95 S.Ct. 623, 42 L.Ed.2d 642 (1974); *United States v. Hatcher*, 423 F.2d 1086 (5th Cir. 1970). The charges were few in number, and the evidence straightforward. We have no reason to surmise that the jury was

---

**6.** As evidence tending to prove the making of a false, exculpatory statement, the facts surrounding Mrs. Jamar's perjury might well have been admissible in a separate trial of the possession and uttering charges, as bearing directly on the issue of guilt. See *Wilson v. United States*, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090 (1896); *United States v. Wilkins*, 385 F.2d 465 (4th Cir. 1967), cert. den. 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1144 (1968); cf. *United States v. Abney*, 508 F.2d 1285 (4th Cir. 1975), cert. den. 420 U.S. 1007, 95 S.Ct. 1451, 43 L.Ed.2d 765 (1975). See also II Wigmore, *Evidence* § 278 (3d ed. 1940). If this were the case, we would have a situation in which virtually all evidence presented in the joint trial would have been admissible in separate trials had a severance been granted. The body of the opinion has been written from the defendant's point of view to give her the benefit of the doubt.

**7.** Clearly without merit is the defendant's suggestion that, apart from inferences drawn from the evidence of perjury, there was no evidence of scienter in Count II of the indictment. The considerable evidence relating to Mrs. Jamar's forgery and uttering of the check permits the strongest inference that she did not possess it innocently.

confused or failed to obey the court's instruction.

 In summary, the possibility of prejudice exists in any case of joinder, except perhaps the unusual case in which all evidence would be mutually admissible in separate trials.[8] Nevertheless, absent undue ·prejudice, cogent policy considerations continue to call for the application of rules of joinder. The most a trial court can do is to judge whether in a given case the prejudice resulting from joinder is too great to be justified by the broader interests of avoiding duplicative trials. Here, the possibility of prejudice, while not nonexistent, was substantially mitigated by the volume of direct evidence supporting the jury's verdict, as well as by the court's cautionary instruction. Viewing this slight possibility in conjunction with the policy considerations previously addressed, we do not find that the district judge abused his discretion in denying a severance.[9]

Of the remaining assignments of error, the only one which merits discussion is the contention that the district court violated Rule 106 of the Federal Rules of Evidence. That rule states: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."

A complete transcript was not made of the preliminary hearing testimony out of which the perjury charge grew. Only the defendant's testimony was transcribed, to the exclusion of that of the defendant's daughter and the postal inspector who visited Mrs. Jamar's home. The government introduced this partial transcript (all of Mrs. Jamar's testimony at the preliminary hearing) over objection, in order to prove the making of the statement alleged to constitute perjury. Mrs. Jamar claims on appeal that her daughter's testimony at the preliminary hearing corroborated her perjury defense that, because of great confusion in the Jamar home the day of the postal inspector's visit, Mrs. Jamar sincerely believed that she had seen and touched the original of the treasury check on that day. It is claimed that this preliminary hearing testimony of the daughter ought in fairness to have been considered contemporaneously with the testimony of Mrs. Jamar.

 This argument misconceives the purpose of Rule 106, which is to permit the contemporaneous introduction of recorded statements that place in context other writings admitted into evidence which, viewed alone, may be misleading. See Advisory Committee's Note to Rule 106, in Redden

---

8. Complete, mutual admissibility, however, is not a requirement for a valid joinder of offenses. See *Baker v. United States*, 131 U.S. App.D.C. 7, 401 F.2d 958, 974–75 (1968).

9. Mrs. Jamar has also strenuously contended that joinder confounded the presentation of her defense on Count I, in that she desired to take the stand on the perjury count, but not on the possession and uttering counts. She takes the position that she declined to testify at all, rather than risk cross-examination that could have had a damaging carry-over on the remaining charges.

Mrs. Jamar relies upon *Cross v. United States*, 118 U.S.App.D.C. 324, 335 F.2d 987 (1964), which held that denial of a severance was reversible error where a defendant wished to testify on only one of two joined offenses, and was thereby confounded or embarrassed in presenting his defense.

The court that decided *Cross* has subsequently narrowed the potential scope of that decision. In *Baker v. United States*, 131 U.S.App. D.C. 7, 401 F.2d 958 (1968), the court indicated that *Cross* does not require a severance every time a defendant merely alleges that he wishes to offer limited testimony. Rather, a particularized showing must be made concerning the testimony the defendant wishes to give and his reasons for remaining silent on the joined counts, so that the court can make an independent evaluation of whether the defendant will be prejudiced to an extent that outweighs the interests favoring joinder.

Here, the defendant has made no such particularized showing, other than simply to assert a desire to testify on Count I, and remain silent on Counts II and III. As the court indicated in *Baker*, to require a severance based on such an unembellished assertion would effectively strip the trial court of its discretion in the matter of joinder, vesting it instead in the defendant. So, even assuming that this court would follow *Baker* instead of considering the matter merely one of the incidental disadvantages of a joint trial, the defendant does not come within the rule.

and Saltzburg, *Federal Rules of Evidence Manual*; McCormick on *Evidence*, § 56 (2nd ed. 1972). There is no such problem here. Mrs. Jamar's testimony was admitted *in toto*; no single portion of it was lifted out of context and introduced. Her testimony was internally complete and unambiguous. While the prior testimony of the daughter (who told her story on the witness stand at trial) may have been of some value to the defense, its omission involves no problem to which Rule 106 addresses itself. The daughter's testimony at the preliminary hearing merely sought to explain the circumstances prevailing at the time of the postal inspector's visit in order to support Mrs. Jamar's defense of confusion. But Rule 106 is not intended as a vehicle for the introduction of substantive evidence of this nature. Its role is to permit partially introduced written statements to be placed in context. The prior testimony of Mrs. Jamar's daughter did nothing to clarify the testimony of Mrs. Jamar that was introduced and was not out of context.[10]

The remaining contentions on appeal having been considered and found without merit, the judgments of conviction are

*AFFIRMED.*

---

**10.** We consider significant the fact that the postal inspector's prior testimony against Mrs. Jamar was not introduced at trial either. If it had been, then whether fairness might dictate the daughter's exonerating testimony should also have been introduced is a question not before us.