943 F.2d 50
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph L. KISSINGER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Melvin J. ESTES, Defendant-Appellant.
 Nos. 90-5553, 90-5562.
 United States Court of Appeals, Fourth Circuit.
 Argued July 11, 1991.
Decided Sept. 10, 1991.
 
 Appeals from the United States District Court for the District of Maryland, at Baltimore. Norman P. Ramsey, District Judge. (CR-90-10-R)
 Argued: Donald Henry Feige, Baltimore, Md., for appellant Estes;
 Benjamin Lipsitz, Baltimore, Md., for appellant Kissinger.
 Irving Gornstein, United States Department of Justice, Washington, D.C., for appellee.
 On Brief: John R. Dunne, Assistant Attorney General, Jessica Dunsay Silver, United States Department of Justice, Washington, D.C., Richard D. Bennett, United States Attorney, Baltimore, Md., for appellee.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, and PHILLIPS and SPROUSE, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Joseph L. Kissinger and Melvin J. Estes appeal from their convictions, after a jury trial, for conspiracy to violate civil rights; interference with housing rights; use of fire in the commission of a felony; destruction of a building used in interstate commerce; possession of an unregistered destructive device; unlawful making of a destructive device; and possession of an unlawfully made destructive device (in violation of 18 U.S.C. § 241; 42 U.S.C. § 3631(a); 18 U.S.C. § 844(h); 18 U.S.C. § 844(i); 26 U.S.C. § 5861(d); 26 U.S.C. § 5861(f); and 26 U.S.C. § 5861(c), respectively); and as to Kissinger only, false declarations before a grand jury in violation of 18 U.S.C. § 1623.
 
 
 2
 On January 9, 1990, Estes and James Burns were indicted by a federal grand jury on the above charges as a result of a June 1986 fire bombing of a black family's home in Baltimore, Maryland. Burns subsequently agreed to plead guilty pursuant to a plea agreement under which he agreed to testify against Kissinger and Estes. A superseding indictment was filed, deleting Burns and accusing Estes and Kissinger of the named offenses. After a trial in August 1990, a jury found both Kissinger and Estes guilty of all counts. On appeal, both appellants contend that the prosecution prejudicially failed to disclose impeachment evidence prior to trial, and that the court erred in limiting the scope of defendants' cross-examination concerning related criminal conduct by government witnesses, and in denying their motions for severance. Kissinger also contends that the court erred in denying him the right to counsel when he appeared before the grand jury. We reject each of these arguments and affirm.
 
 
 3
 In June 1986, the home of Joyce Benne Jones, a black woman, caught fire after two "molotov cocktails" were thrown into her home and exploded. Persons in the neighborhood saw the fire and rescued the Jones family.
 
 
 4
 Burns testified at trial that on the evening of the fire bombing he, Estes, and Debbie Smith, Estes's girlfriend, were riding in an automobile looking for an individual with whom Burns had a disagreement. The search was unsuccessful. Later that evening at Estes's home, Burns and Estes decided to scare the Jones family who lived several blocks away by throwing molotov cocktails at their home. Kissinger and another man, John Boulden, joined them during the discussion. Subsequently, Estes provided disposable bottles which he and Kissinger filled with gasoline and stuffed with rags to create the bombs. The men then proceeded to the Joneses' house, where Kissinger served as a lookout while Estes and Burns threw the bombs. Boulden, who had pled guilty to charges related to the incident, corroborated Burns's testimony as did Michael Cahoon, who entered the residence to rescue the Joneses and later testified that he saw someone resembling Burns running away from the Joneses' house. One Terry Phillips, a friend of the defendants who did not participate in the bombing, testified that Estes told him that he did not like blacks moving into the neighborhood in general and wanted to do something about it.
 
 
 5
 The defense consisted of numerous character witnesses who testified that neither Kissinger nor Estes was prejudiced against blacks, as well as testimony that the two defendants were in another place at the time of the fire bombing.
 
 
 6
 Burns's mother, Eileen Burns, and her neighbor, Douglas Braithwaite, had testified to the grand jury that James Burns had been at home the night of the fire bombing, working on his motorcycles. The prosecution did not provide this evidence to the defendants before the trial. They first learned of this testimony during the government's examination at trial of David Henninger, James Burns's attorney, who had been called to testify regarding James Burns's prior consistent statements regarding the bombing. Defendants claim that the failure of the prosecution to provide the testimony of Ms. Burns and Braithwaite before trial constituted a violation of the principle announced in Brady v. Maryland, 373 U.S. 83 (1963). We find no merit to this contention.
 
 
 7
 First, we do not believe that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). Defendants' apparent strategy to impeach Burns's testimony was to show that Burns was involved in the crime and then inculpated Kissinger and Estes in order to receive a lighter sentence. To offer the testimony of Ms. Burns and Braithwaite would have undercut this approach by casting doubt on Burns's actual participation in the bombing. In the alternative, if Kissinger and Estes used the testimony to prove that Burns was not with them on the night in question, we are hard pressed to see how the jury would have believed the ultimate inference--that Burns pled guilty to a crime he did not commit in order to implicate Kissinger and Estes.
 
 
 8
 Second, after the defendants obtained the evidence, they made no effort to use it by recalling Burns as a witness and cross-examining him. Likewise, the defendants failed to call Ms. Burns and Braithwaite as defense witnesses, even though they were available. Defendants argue that they had no time to interview the witnesses, but they fail to explain why they never sought a continuance. In view of these trial strategies, they cannot now be heard to argue they were prejudiced by the prosecution's failure to disclose the grand jury evidence prior to trial. See United States v. Kubiak, 704 F.2d 1545, 1550 (11th Cir.), cert. denied, 464 U.S. 852 (1983).
 
 
 9
 The defendants argue that the district court erred in refusing to allow them to cross-examine John Boulden with respect to his involvement in an earlier incident at the Joneses' residence. At trial, Boulden, who had pled guilty to a single count of conspiracy pursuant to a plea agreement, testified against Kissinger and Estes. The government had avoided questioning Boulden concerning his participation in an earlier cross-burning incident at the Joneses' home, which he had admitted in his grand jury testimony. Subsequently, the court refused to permit defendants to question him about it on cross-examination. Defendants contend that this was a prejudicial abuse of the court's discretion. We disagree.
 
 
 10
 Rule 608(b) of the Federal Rules of Evidence permits inquiry on cross-examination into prior instances of conduct relating to truthfulness or untruthfulness in order to attack or support the credibility of the testifying witness.* However, Boulden's participation in the cross-burning is not, in itself, probative of his veracity. Therefore, there was no abuse of discretion in refusing to permit such an inquiry. See generally 3 J. Weinstein & M. Berger, Weinstein's Evidence p 608 at 608-46, 608-47 (1990) (crimes of force or intimidation not admissible under Rule 608 to prove untruthfulness). Indeed, even if such an inquiry were permissible under the rule, the district court nevertheless was within its discretion in prohibiting inquiry into the cross-burning, since the probative value of such testimony would be "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Fed.R.Evid. 403.
 
 
 11
 Defendants' final shared assignment of error is that the district court abused its discretion in denying their motion for severance. Their principal contention is that joining the perjury count against Kissinger with the substantive fire bombing counts against both Kissinger and Estes would likely cause the jury to be more inclined to convict on the substantive counts. We find here neither inherent prejudice nor a "clear abuse affecting substantial rights of the accused." See United States v. Jamar, 561 F.2d 1103, 1106 (4th Cir.1977). As in Jamar, most of the evidence offered regarding the substantive counts was also admissible to prove perjury, and the evidence against defendants on the substantive counts was strong. Furthermore, the jury was cautioned by the court to treat each count separately and to consider the perjury evidence only as to Kissinger.
 
 
 12
 Kissinger's contention that he was denied his right to counsel when he appeared before the grand jury is likewise without merit. At the time he testified, there were no criminal proceedings against him, nor were they contemplated. See United States v. Mandujano, 425 U.S. 564, 581 (1976). More importantly, before he testified before the grand jury, the government advised Kissinger that he had a right to counsel and would be given an opportunity to consult with him during the proceedings. Kissinger indicated his understanding of this right, and chose to proceed without counsel. Under these circumstances, and considering this issue was not raised below, any deficiency in this respect was not plain error. See Fed.R.Crim.P. 52(b).
 
 
 13
 Finding no merit to any of the arguments listed by the appellants, the judgment of the district court is affirmed.
 
 
 14
 AFFIRMED.
 
 
 
 *
 Rule 608(b) provides, in pertinent part:
 Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness,....