**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gordon Ronnell HINES, Defendant–Appellant.**

**No. 93–5935.**

United States Court of Appeals, Fourth Circuit.

Argued June 9, 1994.

Decided Oct. 27, 1994.

Rehearing In Banc Granted; Opinion Vacated Jan. 12, 1995.

**ARGUED:** George Alan DuBois, Jr., Asst. Fed. Public Defender, Raleigh, NC, for appellant. David Paul Folmar, Jr., Sp. Asst. U.S. Atty., Raleigh, NC, for appellee. **ON BRIEF:** Janice McKenzie Cole, U.S. Atty., Raleigh NC, for appellee.

Before RUSSELL, Circuit Judge, PHILLIPS, Senior Circuit Judge, and JACKSON, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed in part, reversed in part, and remanded for resentencing by published opinion. Senior Judge PHILLIPS wrote the opinion, in which Judge JACKSON joined. Judge RUSSELL wrote an opinion dissenting in part.

## OPINION

PHILLIPS, Senior Circuit Judge:

Gordon Hines appeals his conviction on two counts of possession of cocaine and heroin with intent to distribute; two counts of

use of a firearm during a drug trafficking crime; and one count of possession of a firearm by a convicted felon. Hines challenges as error the district court's denial of his pretrial motion to sever trial on several of the counts and its denial of his motion for judgment of acquittal on the second count charging him with use of a firearm during a drug trafficking crime. We conclude that the district court did not abuse its discretion in denying the motion for severance, but did err in denying the motion for acquittal as to the second count of firearms use. We therefore reverse the conviction on that count and remand for resentencing.

I

The charges against Hines arose out of two separate incidents which occurred in Wilson, North Carolina, the first on July 31, 1992, and the second on September 19, 1992. On July 31st, pursuant to a search warrant, police officers entered a bedroom in a boarding house located in Wilson and discovered Hines sitting on the edge of a bed. As soon as the officers appeared, Hines ran into an adjoining bathroom in which another person was found shooting heroin. The officers searched Hines and discovered in his possession twelve bags of cocaine, seven bags of heroin, $601.00 in U.S. currency folded into a roll, and a key to the front door of the apartment. An additional forty-nine bags of cocaine and thirteen bags of heroin were found hidden in a radio in the bedroom. The officers also retrieved a 9mm pistol hidden under a pillow on the bed on which Hines had been sitting.

The September 19th incident involved a search by the officers, again pursuant to a warrant, of a house with a reputation as a "shooting gallery." When the officers arrived at the house to conduct their search, numerous people were there, apparently attending a barbecue. Upon entering a back room of the house, the officers encountered Hines sitting on a couch; a woman was also present in the room. Hines immediately stood up; as he did, he threw several bags of cocaine and heroin in the air and moved to a chair near the couch. Hines again was found in possession of several bags of cocaine and heroin, and $81.00 in U.S. currency folded into a roll. A total of thirty-seven small bags of the two drugs were lying on and around the couch. The drugs recovered were packaged in an identical manner and bore markings similar to those found in the July 31st search. The officers also found a .22 caliber revolver stuffed beneath the cushions of the couch on which Hines had been sitting.

Neighbors testified that while Hines occasionally visited the house, he did not reside there. The officers found a metal plate in the kitchen of the house bearing the words "Peaches' Place." Hines' nickname is Peaches. A defense witness said the plate had been brought to the house earlier in the day.

As a result of these incidents, Hines was charged as to each with one count of possession with intent to distribute cocaine and heroin in violation of 21 U.S.C. § 841(a)(1), and one count of use of a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c). Also, in connection with the July incident, Hines was charged with unlawful possession of a weapon by a felon in violation of 18 U.S.C. § 922(g). Hines filed a pretrial motion to sever the three counts arising out of the July arrest from the remaining two counts based on the September arrest. The district court denied the motion, and all five counts were tried together. The jury found Hines guilty on all counts.

The district court sentenced Hines to 210 months on the drug offenses and 120 months on the felon-in-possession charge, these sentences to run concurrently. On the first use of a firearm charge, Hines received a mandatory 60–month sentence and on the second, 240 months, these sentences to run consecutively to each other and to the other sentences imposed. In total, Hines received a sentence of 42.5 years imprisonment.

This appeal followed.

II

In reviewing a sufficiency challenge, we must affirm if, viewing the evidence in the

light most favorable to the government and all reasonable inferences that may be drawn from it, a rational jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Jones*, 945 F.2d 747 (4th Cir.1991).

■■■ Hines challenges as insufficient the evidence that he used a firearm during and in relation to a drug trafficking offense on September 19th, 1992. He argues that the government failed to show that he actually or constructively possessed the firearm retrieved from beneath the cushions of the couch on which he was sitting.

> Section 924(c)(1) provides that
> [w]hoever during and in relation to any ... drug trafficking crime ..., uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years.... In the case of his second or subsequent conviction under the subsection, such person shall be sentenced to imprisonment for twenty years....

18 U.S.C. § 924(c)(1). To prove a violation of this section, the government must show both (1) that the defendant possessed the firearm and (2) that it was possessed during or in relation to a drug trafficking crime. *See United States v. Horne*, 4 F.3d 579, 587 (8th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1121, 127 L.Ed.2d 430 (1994). The government is not required to show that the defendant *actually* possessed the firearm, or that he "brandished or discharged" it to prove "use" within the meaning of the statute. *See United States v. Watson*, 953 F.2d 406, 409 (8th Cir.1992); *United States v. Tolliver*, 937 F.2d 1183, 1190 (7th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 329, 116 L.Ed.2d 269 (1991). It must only demonstrate a relationship between the firearm and the drug offense. Even if the weapon remains concealed during the underlying drug crime, the firearm is still "used" by the defendant if it "facilitates or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others." *United States v. Stewart*, 779 F.2d 538, 540 (9th Cir.1985). Still, the government must at least show that the defendant constructively possessed the firearm in order to prove he used it in relation to the drug transaction. And to prove constructive possession, "the government must produce evidence showing ownership, dominion, or control over the contraband itself or the premises or vehicle in which the contraband is concealed." *United States v. Blue*, 957 F.2d 106, 107 (4th Cir.1992) (quoting *United States v. Ferg*, 504 F.2d 914, 916–17 (5th Cir.1974)).

■■ The government presented no evidence that Hines actually possessed the gun. We conclude that the evidence is also insufficient to prove beyond a reasonable doubt that Hines had constructive possession of the firearm. The gun was neither visible nor readily accessible to Hines, nor was there any evidence that Hines had previously possessed or that he owned the gun. *Cf. United States v. Coslet*, 987 F.2d 1493, 1495 (10th Cir.1993) ("We ... presume a nexus between a firearm and a drug trafficking offense when an individual with ready access to a firearm is involved in such an offense."). One of the officers testified that the gun was located about a foot or two from Hines beneath the cushions of the couch. JA 77. The police officer who recovered the gun, however, testified that he could see the gun, but that he could not reach it without opening up the sleeper-sofa:

> Q: Now, when—you were the officer that actually found the revolver in this September case?
>
> A: Yes, sir.
>
> Q: Found it sitting between the seat cushions; is that right?
>
> A: Yes, sir.
>
> Q: Now, it was a sleeper couch, correct?
>
> A: Yes, sir.
>
> Q: Pulled it out and it made a bed?
>
> A: Right.
>
> Q: When you pulled it out to see what was in there, did the gun fall out at that point?
>
> A: Yes, it fell. I couldn't reach it until I opened up the couch.

Q: Okay. So, it had worked itself down into the sleeper couch part, the mattress part?

A: Yes, sir.

Q: Until it fell out on the floor, you didn't know it was in there?

A: I could see it, but I couldn't get to it.

JA 100–01. To prove possession it is not enough to show that a weapon was present during the underlying drug offense; there must be some evidence that the defendant exerted dominion or control over the weapon. *See Blue,* 957 F.2d at 108 ("The mere proximity of a weapon to a passenger in a car goes only to its accessibility, not to the dominion or control which must be proved to establish possession.") (quoting *United States v. Soto,* 779 F.2d 558, 560 (9th Cir.1986), *opinion amended by* 793 F.2d 217 (9th Cir. 1986), *cert. denied,* 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 70 (1987)). In this case, there was not sufficient evidence of the requisite dominion or control by Hines over the firearm itself.

The government argues that Hines' movement away from the couch upon the officers' entry into the room suggests that Hines knew of the gun's presence. Even viewed in the light most favorable to the government we do not believe this evidence suffices to support that critical inference. Hines was surrounded by and in possession of over forty bags of cocaine and heroin when the officers entered the room. The most reasonable inference is that Hines wanted to distance himself from the numerous bags of illicit drugs. That he also intended to distance himself from a weapon that was his and that he knew to be concealed in the couch is of course a possibility, but we think it no more than a speculative one when assessed in light of the total circumstance as revealed by the evidence.

■ It is true that we have found sufficient evidence of constructive possession in the circumstance that an object has been found on premises or in a vehicle over which a defendant has ownership or control, even though the object was not readily accessible to the defendant. *See, e.g., United States v. Nelson,* 6 F.3d 1049, 1053–54 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2142,

128 L.Ed.2d 870 (1994). Here, however, there was no more than highly speculative evidence that Hines had the requisite dominion or control over the premises searched by the officers on September 19th. Pointing toward his dominion or control over the house itself there was only the evidence of the metal tag with "Peaches' Place" engraved upon it that was found in the kitchen, the testimony that Hines occasionally visited the house, and his concession that though he did not "stay" there, he had some clothes and "stuff" there. At odds with any inference of Hines' effective dominion over these premises from these sparse facts, there was other evidence suggesting mere transient presence that, because it does not directly conflict with the government's evidence, we must take into account even as we view its totality in the light most favorable to the government. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In the first place there was no evidence that Hines was either the legal owner or a legal tenant of the premises. Several defense witnesses testified, without contradiction, that one Early Warren and his girlfriend were the apparent tenants of the house. There was also uncontradicted testimony that Hines lived at another address with his mother and that a man had stopped by during the party to drop off the metal plate. In total context, we do not believe the evidence sufficed to support the necessary inference of Hines' dominion or control over the premises from which his constructive possession of the firearm could further be inferred.

Because there was insufficient evidence to show that Hines either actually or constructively possessed the firearm retrieved by the officers from the couch on September 19th, we must reverse his conviction on that count.

### III

■ The district court's ruling on a pretrial motion to sever based on prejudicial joinder is subject to review for abuse of discretion. *United States v. Cole,* 857 F.2d 971 (4th Cir.1988), *cert. denied,* 489 U.S. 1070, 109 S.Ct. 1351, 103 L.Ed.2d 819 (1989).

In ruling on such a motion, the district court "must balance any possible prejudice to the accused against the interest of the efficient administration of justice." *Id.* at 974 (citing *United States v. Jamar*, 561 F.2d 1103, 1106 (4th Cir.1977)). Since we have reversed Hines' conviction on the second § 924(c) charge on insufficiency grounds, we consider only whether the district court erred in denying the motion to sever trial on the drug offense arising from the September arrest from the counts based on the July arrest.

Here judicial economy was furthered by joinder of the counts because several of the officers who testified at Hines' trial were involved in both the July and September arrests. Hines points to the special potential for prejudice from joined counts that is created by the risk of improper inferences of criminal propensity. That potential was certainly present here where the joined counts related to two separate incidents fairly close together in time and involving similar conduct. But the potential has to be considered significantly reduced where, as here, "evidence of all the joined crimes would be mutually admissible for legitimate purposes in separate trials for each offense." *United States v. Jamar*, 561 F.2d 1103, 1106 (4th Cir.1977). Under our precedents in this circuit, we are satisfied that the evidence surrounding the search on July 31st would be admissible under Fed.R.Evid. 404(b) at a separate trial on the charges based on his September 19th arrest, and vice versa, to show intent or knowledge. For this reason, the likelihood of prejudice as a result of joinder of the counts was low, and the interests of judicial economy were served by joinder of the counts. We therefore cannot conclude that the district court abused its discretion in denying the motion for severance.

## IV

For the foregoing reasons, we affirm Hines' conviction on all counts except the second count of use of a firearm during a drug trafficking offense on September 19, 1992. As to this count, we reverse the conviction and remand the case for resentencing in light of the reversal.

*AFFIRMED IN PART; REVERSED IN PART; REMANDED FOR RESENTENCING.*

DONALD RUSSELL, Circuit Judge, dissenting in part:

Two police officers testified that when they entered a house where addicts frequently used drugs (a "shooting gallery"), the defendant Hines tossed bags of drugs into the air and jumped up from the couch to a nearby chair. Was he trying to distance himself from the gun stuffed in the couch or only from the numerous bags of cocaine and heroin on and near the couch? Such questions are best left for juries.

I agree with the majority that the critical inquiry in this case is whether Hines exerted ownership, dominion, or control over the gun or the house. *United States v. Blue*, 957 F.2d 106, 107 (4th Cir.1992). In *Blue*, this Court reversed for insufficient evidence a conviction based upon only the testimony of an officer that the defendant in the passenger seat of a car dipped his shoulder when the officer approached and the discovery of a gun under the passenger seat. *Id.* at 108. This Court emphasized, however, that "the facts of this case fall outside, *but just barely*, the realm of the quantum of evidence necessary to support a finding of constructive possession." *Id.* (emphasis added).

Unlike *Blue's* purported shoulder dip, Hines' leap from couch to chair sufficiently supports the critical inference of knowledge of the gun's presence within the couch. A jury could reasonably infer from the forty-eight small bags of cocaine and heroin found on or near Hines that he would have had a gun nearby during a party in a "shooting gallery." Therefore, I consider the inference of awareness of the concealed gun from Hines' sudden movement away from the couch more than a speculative possibility, and appropriate for the jury to determine.

The majority also improperly discounts the evidence linking Hines to the house by focusing too heavily upon actual "ownership" of the premises and disregarding "control." Aside from the "Peaches' Place" tag found in the kitchen, evidence showed that Hines was at least an occasional visitor who had some clothes and "stuff" there. Furthermore, Hines' own witness testified that Hines had

helped plan and prepare for the party and that he had made the decision not to cancel it when it was raining that morning. *See* JA 129. Thus, the jury could infer that on the day of the party, Hines had sufficient control of the house to support a conviction for possessing a gun found within the couch on which he was sitting.

When reviewing the sufficiency of the evidence, we "allow the government the benefit of *all* reasonable inferences from the facts proven to those sought to be established," *United States v. Tresvant,* 677 F.2d 1018, 1021 (4th Cir.1982) (citations omitted) (emphasis added), not merely what an appellate court considers the *"most* reasonable inference" (majority opinion at 78) (emphasis added). Because a rational jury could have found beyond a reasonable doubt that Hines constructively possessed the gun found in the couch during the September 19th search, I dissent. I agree with the majority, however, that the district court correctly denied defendant's pretrial motion to sever.