**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 95-5138

RICHARD S. FOWLER,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Deborah K. Chasanow, District Judge.
(CR-94-216-DKC)

Argued: March 8, 1996

Decided: May 13, 1996

Before WIDENER, WILKINS, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion. Judge Widener wrote
a separate concurring opinion.

_____

**COUNSEL**

**ARGUED:** Robert Charles Bonsib, MARCUS & BONSIB, Green-
belt, Maryland, for Appellant. Raymond Allen Bonner, Assistant
United States Attorney, Greenbelt, Maryland, for Appellee. **ON
BRIEF:** Lynne A. Battaglia, United States Attorney, Greenbelt,
Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Richard S. Fowler appeals his convictions for unlawful possession of a firearm by a convicted felon, see 18 U.S.C. § 922(g), making a false statement in connection with the acquisition of a firearm, see 18 U.S.C. § 924(a)(1)(A), and distribution of cocaine base ("crack"), see 21 U.S.C. § 841(a)(1). Finding no reversible error, we affirm.

I.

Fowler operated a small moving business in Clinton, Maryland. Renee Butler, a government witness, worked as Fowler's secretary from late January through July 1993. While working for Fowler, Butler observed that various persons carrying paper or plastic bags went into Fowler's office to meet with him. After these persons left, Fowler had Butler count money for him. She once counted $5,000 or $6,000 in cash. On one occasion, after a man named Drew left Fowler's office, Fowler mentioned that he was holding money for Drew. Fowler also "mentioned that he couldn't let anything happen to the money because it was Mr. Drew's drug money."

Butler testified that she saw "about three" different guns in Fowler's office, and Fowler told her the guns were there for "office protection." Once, at a point when there were no guns in the office, Fowler asked Butler to buy a gun for the business. Butler initially refused, but she later agreed to make the purchase.

On May 28, 1993, Butler and Fowler went to a gun store, and Butler completed a Maryland State Police application for purchase of a firearm. On July 26, 1993, they returned to the same store to buy the gun. Butler completed an ATF Firearms Transactions Record and bought the gun. An ATF special agent was conducting routine surveillance inside the store that day. He noticed that Fowler, not Butler,

2

was the person interested in the gun. The agent concluded that a straw purchase might be occurring. Shortly after Butler and Fowler left the store, the police stopped their car and confiscated the gun. Butler was questioned by police, and she told them that the gun was actually for Fowler, not herself. Butler quit her job two weeks later.

In August 1993 a confidential informant told the D.C. Metropolitan Police Department that Fowler was involved in narcotics trafficking. A month later, after some additional investigation, the confidential informant arranged for Fowler to sell an eighth of a kilo of crack to an undercover agent, Detective Pamela Prather. On September 23, 1993, the informant and Prather drove to Fowler's business to make the crack purchase. Prather gave Fowler $3,500. Fowler handed the informant a bag, and the informant in turn gave the bag to Prather. Detective Prather saw Fowler hand the bag to the informant. It contained 125 grams of crack.

Four days later, on September 27, 1993, the informant arranged to make another crack purchase from Fowler. Detective Prather and the informant again met Fowler at his business. Prather gave the informant $4,100 in Fowler's presence, and Fowler asked Prather to leave. When Prather went outside, she used a pay phone near Fowler's business, and Fowler happened to see her on the phone. Fowler apparently became suspicious and left without delivering the crack. Later that night, the informant and Prather returned to Fowler's business to complete the transaction. Fowler went up to their car and told them to wait. Fowler then drove up and down the street and looked inside a parked surveillance vehicle. He even got out of his car and looked inside a second parked surveillance vehicle. After the first vehicle moved to a different location, Fowler pulled up behind it, flicked his headlights on bright, and drove away. Prather had no further contact with Fowler that night. She thus left without retrieving the $4,100 the informant had given Fowler earlier that day. The informant did get $3,800 back two days later.

Fowler was indicted for unlawful possession of a firearm by a convicted felon, making a false statement in connection with the acquisition of a firearm, and distribution of crack on September 23, 1993. During the three-day trial, nine witnesses testified for the prosecution. The defense presented no evidence. The jury convicted Fowler on

3

each count. At sentencing the district court increased Fowler's offense level by two after finding that Fowler possessed a firearm in connection with his drug trafficking. See U.S.S.G.§2D1.1(b)(1). The court imposed another two-level increase based on its finding that Fowler attempted to sell another 125 grams of crack four days after the September 23, 1993, sale. This appeal followed.

II.

Fowler argues (1) that joinder of the firearm and drug counts was impermissible under Fed. R. Crim. P. 8(a), and (2) that the trial court should have severed the counts under Rule 14 because of prejudice from the joinder. We reject both arguments.

A.

We review de novo the propriety of joinder of charges in an indictment under Rule 8(a). United States v. Gorecki , 813 F.2d 40, 41 (3d Cir. 1987). The rule permits joinder of "two or more acts or transactions connected together or constituting parts of a common scheme or plan." Fed. R. Crim. P. 8(a). "[N]arcotics-related and weapon-related charges may be joined [when they are] sufficiently connected temporally or logically to support the conclusion that the two crimes are part of the same transaction or plan." Gorecki, 813 F.2d at 42. A defendant who demonstrates improper joinder must then prove actual prejudice. Id. Actual prejudice occurred if the joinder had a substantial and injurious effect on the jury's verdict. Id.

Here, the government's theory was that the gun acquired through the straw purchase was related to Fowler's drug trafficking. Testimony showed that Fowler had large amounts of drug money at his business and that he "couldn't let anything happen to the money." We believe Fowler's need to protect drug money logically connects the gun and drug charges. In any event, Fowler has failed to demonstrate actual prejudice. The testimony of Butler and the ATF agent was more than sufficient to convict Fowler on the gun charges. Likewise, Detective Prather's testimony amply supported Fowler's conviction on the drug charge. Fowler's challenge to joinder under Rule 8(a) is without merit.

4

B.

The district court's ruling on a pretrial severance motion based on prejudicial joinder under Rule 14 is reviewed for abuse of discretion. United States v. Hines, 39 F.3d 74, 78 (4th Cir. 1994). The district court "must balance any possible prejudice to the accused against the interest of the efficient administration of justice." Id. at 79 (quoting United States v. Cole, 857 F.2d 971, 974 (4th Cir. 1988), cert. denied, 489 U.S. 1070 (1989)). Prejudice is minimized where "evidence of all the joined crimes would be mutually admissible for legitimate purposes in separate trials for each offense." Id. (quoting United States v. Jamar, 561 F.2d 1103, 1106 (4th Cir. 1977))."This standard does not require that every item of evidence relating to one offense be admissible in a separate trial for the other, but rather looks in a broader sense to whether the rules relating to `other crimes' evidence have been satisfied." United States v. Foutz , 540 F.2d 733, 736 n.3 (4th Cir. 1976).

Fowler argues that severance was necessary because evidence of the joined crimes would not be mutually admissible in separate trials, and because the fact that he was a convicted felon would have been inadmissible at the trial on the drug count. We believe that severance was not required.

First, joinder promoted judicial economy because Butler's testimony applied to all three counts. Second, most of the evidence of each charged offense was mutually admissible. Evidence of Fowler's straw purchase of the firearm would be admissible in a separate trial on his drug charge because guns are considered "tools of the trade" for drug traffickers. See United States v. Cooper, 827 F.2d 991, 995 (4th Cir. 1987). Likewise, evidence of Fowler's drug trafficking would be admissible with respect to the gun charges to show a motive for obtaining the gun. See Fed. R. Evid. 404(b) (evidence of other crimes admissible to prove motive). As a precaution, however, the trial court gave the following limiting instruction:

> The indictment contains three counts. Each count charges the defendant with a different crime. You must consider each count separately and return a separate verdict of guilty or not guilty for each. Whether you find the defendant guilty

5

or not guilty as to one offense should not affect your verdict to any other offense charged.

Fowler is correct that the underlying felony the government introduced to prove that Fowler was a felon-in-possession would have been inadmissible in a separate trial on the drug charge. However, we do not think this item of evidence rendered the trial judge's decision an abuse of discretion. The parties stipulated that Fowler had previously been convicted of a felony, and the government did not emphasize the point at trial. In addition, the court instructed the jury that the "stipulation [that Fowler was a convicted felon] was admitted as it relates to the charges concerning the firearm and you may not consider it on Count Three [the drug charge]." We conclude that the trial court did not abuse its discretion in denying Fowler's motion to sever. See United States v. Sanko, 787 F.2d 1249, 1252 (8th Cir. 1986).

III.

Fowler also appeals the admission, over his objection, of evidence of various other bad acts he committed. Detective Ronnie Hairston, an undercover narcotics officer, testified that in May 1990 Fowler met with him to buy two kilos of crack. Fowler negotiated a purchase price of $20,000 per kilo. Fowler then told Hairston that he was going to sell the crack at $26,000 per kilo and that he had a moving business that allowed him to transport the crack. Fowler was then arrested. Detective Barbara Hampton also testified that on June 13, 1990, she executed a search warrant at Fowler's moving business. During that search she found, among other things, a .38 revolver that was inside a bag (a photograph was taken of the gun at the time) and a 1979 photograph showing Fowler with a gun in his waist band and stacks of hundred dollar bills in front of him. The government also introduced a copy of the face sheet of the 1990 search warrant. (With the exception of the 1979 photograph, we will call this the "1990 evidence.")

Fowler argues that none of this evidence was admissible under Rule 404(b). The rule states that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for

6

other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Rule 404(b) evidence is admissible if (1) it is relevant to an issue other than character, (2) it is necessary to prove an element of the crime on trial, (3) it is reliable, and (4) its probative value is not substantially outweighed by the danger of unfair prejudice. United States v. Bailey, 990 F.2d 119, 122 (4th Cir. 1993); see Fed. R. Evid. 403. We think it apparent that the 1990 evidence was necessary and reliable. See United States v. Hernandez, 975 F.2d 1035, 1040-41 (4th Cir. 1992). And we find it unnecessary to consider whether the 1979 photograph was necessary and reliable. Therefore, we confine our discussion to the first and fourth requirements, relevance and the danger of unfair prejudice.

The government argues that the 404(b) evidence was "relevant . . . to prove Fowler's knowledge and intent of drug trafficking." Government's Brief at 29. Although a defendant's plea of not guilty places in issue all elements of the crime charged, including intent, "this does not throw open the door to any sort of other crimes evidence." Bailey, 990 F.2d at 123. "Evidence to show intent is not admissible when the unrelated bad act is `tenuous and remote in time from the charges in the indictment.'" Id. at 124 (quoting United States v. Cole, 491 F.2d 1276, 1279 (4th Cir. 1974)). We hold that 1990 is not too remote. See United States v. Rawle, 845 F.2d 1244, 1248 (4th Cir. 1988) (eight years prior not too remote). Thus, the 1990 evidence, that is, evidence of the attempted drug buy in 1990, the gun found in the 1990 search, and the face sheet of the 1990 search warrant, was relevant to the issue of intent. However, the 1979 photograph was irrelevant to the issue of intent. A fourteen-year gap between the date of the photograph and the crime charged renders the photograph tenuous and remote in time. The government offered nothing to connect the 1979 photograph to the reason for the 1990 search or to the present charges beyond the bald assertion that Fowler was engaged in drug trafficking for many years. That assertion is patently insufficient to establish the relevance of a fourteen-year-old photograph.

The fourth requirement for admissibility of bad act evidence is that its probative value must not be substantially outweighed by the dan-

7

ger of unfair prejudice. "A court should exclude evidence when there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and [ ] this risk is disproportionate to the probative value of the offered evidence." Hernandez, 975 F.2d at 1041 (internal quotation marks omitted). Here, we believe that the 1990 evidence was sufficiently probative to warrant admission. But the 1979 photograph utterly fails this balancing test. The fourteen-year-old photograph had no probative value with respect to the 1993 charges. And it is hard to imagine anything more damaging to a defendant in a drug case than his photograph with a gun and stacks of cash. Admission of the 1979 photograph was error.

However, because the other evidence against Fowler was overwhelming, we are compelled to hold that admission of the photograph was harmless error. Nonconstitutional error is harmless if we "can say `with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" United States v. Ince, 21 F.3d 576, 583 (4th Cir. 1994) (quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946)); see Fed. R. Crim. P. 52(a). In making this assessment, we must consider three factors: "(1) the centrality of the issue affected by the error; (2) the steps taken to mitigate the effects of the error; and (3) the closeness of the case." Ince, 21 F.3d at 583. Here, the photograph affected the case's central issue of whether the drug transaction occurred. The photograph made it more believable that Fowler was a drug dealer. But the district court mitigated the effect of the error with the following limiting instruction:

> [Y]ou may not consider the evidence of the similar acts as a substitute for proof that the defendant committed the crimes charged. Nor may you consider this evidence as proof that the defendant has a criminal personality or character. The evidence of other similar act was admitted for a much more limited purpose and you may consider it only for that limited purpose.

Again, this was not a close case. As we previously explained, the testimony of Butler and the ATF agent strongly supported Fowler's convictions on the firearm charges. And the testimony of Butler and various law enforcement officers involved in the crack purchases pro-

8

vided overwhelming evidence of Fowler's guilt on the distribution charge. Therefore, we are confident that the "judgment was not substantially swayed by the error," Kotteakos , 328 U.S. at 765, and we affirm the convictions.

We do pause to note that we cannot imagine how the government thought the 1979 photograph was admissible. Indeed, we cannot understand why the government would risk jeopardizing an already strong case by introducing "bad acts" of fourteen years ago. Our conclusion that the error was harmless should not be taken by the government as a license to offer this kind of plainly inadmissible evidence in the future.

IV.

Fowler next argues that the district court erred by increasing his offense level by two, pursuant to U.S.S.G. §2D1.1(b)(1), for possession of a firearm. He says that there was not a sufficient temporal and spatial relationship between the commission of the principal offense and the possession of the firearm. We disagree.

U.S.S.G. §2D1.1(b)(1) provides, "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels." The Application Notes state, "The adjustment should be applied if the weapon is present, unless it is clearly improbable that the weapon was connected with the offense." A firearm need not be directly involved in the crime of conviction so long as the district court finds that a firearm was involved in the offense conduct as a whole. United States v. Falesbork, 5 F.3d 715, 720-21 (4th Cir. 1993). However, the temporal remoteness of the defendant's contact with the gun from his crime of conviction may be great enough to render an increase under §2D1.1(b)(1) improper. Id. (four or five month time gap did not render increase improper). In this case, the district court found that "the purpose of the purchase of the firearm in Count One . . . was because of the situs of the distribution of the drugs at the office." This finding, which is supported by Butler's testimony that Fowler needed to protect drug money, is not clearly erroneous. We therefore affirm the enhancement.

9

V.

Finally, Fowler argues that the district court erred by further increasing his offense level by two because the court's conclusion that he was involved in an attempt to sell 125 grams of crack on September 27, 1993, was clearly erroneous. He concedes that an attempt to distribute 125 grams of crack would warrant a two-level increase as relevant conduct under U.S.S.G. §§ 2D1.1 and 1B1.3(a)(2) if supported by sufficient evidence. However, Fowler says the only evidence of an attempt was that the informant was given $4,100 in cash and that the informant returned $3,800 two days later. We disagree. There was also evidence that Fowler became concerned when he saw Prather on the phone, that he conducted countersurveillance activities, and that the attempt occurred when Fowler was engaged in an active drug business. The district court's finding on the attempted sale was not clearly erroneous, and the additional two-level increase was proper.

VI.

Fowler's convictions and sentence are affirmed.

AFFIRMED

WIDENER, Circuit Judge, concurring:

I concur in the result as to the gun charge solely because there was direct, unimpeached and unquestioned evidence that Fowler was carrying a gun when he left the store: "Mr. Fowler was carrying the gun, he carried the gun out of the store and we got into the car and drove off." Butler's testimony, A.104.

I concur in the result as to the drug charge solely because there was also direct, unimpeached and unquestioned evidence that Fowler handed the illegal drugs to the informant: "Fowler handed the informant a bag, and the informant in turn gave the bag to Prather. Detective Prather saw Fowler hand the bag to the informant. It contained 125 grams of crack." Slip op. at 3, Prather's testimony, A.188-189.

10

Absent such overwhelming evidence, the overkill exhibited by the government in this case with respect to other bad acts might well have resulted in the release of a patently guilty drug dealer.

11